IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Roger Dale Burke,                    )        C/A No. 0:15-1107-MBS-PJG
                                     )
                Petitioner,          )
                                     )
vs.                                  )        **REPORT AND RECOMMENDATION**
                                     )
Warden Robert Stevenson,             )
                                     )
                Respondent.          )
_____  )

        Petitioner Roger Dale Burke, a self-represented state prisoner, filed this petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter comes before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the respondent's motion for summary judgment.  (ECF No. 9.)  Pursuant to Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), Burke was advised of the summary judgment and dismissal procedures

and the possible consequences if he failed to respond adequately to the respondent's motion.  (ECF

No. 11.)  Burke filed a response in opposition to the respondent's motion.  (ECF No. 20.)  Having

carefully considered the parties' submissions and the record in this case, the court concludes that the

respondent's motion for summary judgment should be granted and Burke's Petition denied.

## BACKGROUND

        Burke was indicted in September 2002 in Lexington County for murder, first-degree burglary,

attempted arson, and possession of a weapon during the commission of a violent crime (2002-GS-32-

3278, -3279, -3280, -3281).  (App. at 792-807, ECF No. 10-4 at 139-54.)  Burke was represented by

William Nettles, Esquire, and on August 23-25, & 27, 2004 was tried before a jury and found guilty

as charged.   The circuit court sentenced Burke to life imprisonment for murder, thirty years'

imprisonment for first-degree burglary, twenty years' imprisonment for attempted arson, and five

years' imprisonment for possession of a weapon during the commission of a violent crime. (App. at 602, ECF No. 10-3 at 104.)

Burke filed a direct appeal, but his appeal was dismissed by the South Carolina Court of Appeals. Burke's *pro se* motion for rehearing was denied. Burke then filed an application for post-conviction relief ("PCR"). The state circuit court denied Burke's PCR application. Burke petitioned the South Carolina Supreme Court for a writ of certiorari, which was denied. This action followed.

## FEDERAL HABEAS ISSUES

Having exhausted his state remedies, Burke asserts the following issues in the instant petition for a writ of habeas corpus:

**Ground One:** The PCR Judge erred for denying relief for Ineffective Assistance of Counsel for failure to pursue an Insanity Defense.

**Ground Two:** The P.C.R. court erred in findings that trial counsel wasn't ineffective in failing to object to the solicitors prosecutorial misconduct, and repeated references during opening and closing arguments to the jury that petitioner acted as Judge, Jury and Executioner where it is improper for a solicitor to offic[i]ally characterize a defendant as a murder[er] and cold blooded killer until the defendant has been found guilty of murder.

**Ground Three:** The P.C.R. Court erred by not denying relief of P.C.R. for Ineffective Assistance of Counsel, where attorney did not object to the prosecutor vouching for state witness credibility and pitting against the applicant, and calling the applicant a liar.

**Ground Four:** The P.C.R. Court erred in finding that counsel was not ineffective for failing to object to the Implied Malice jury charge, that Malice may be inferred from the use of a deadly weapon is improper where evidence is presented that would reduce, mitigate, excuse, or justify the Homicide.

**Ground Five:** The P.C.R. Court erred in finding that trial counsel was not ineffective for failing to object to the solicitors cross examination of petitioner, regarding facts not supported by the evidence.



**Ground Six**: The P.C.R. Court erred in finding that trial counsel was not ineffective by calling a defense witness who testified that petitioner had told him he planned to put his entire family in a caustic chemical tank where such testimony eliminated any chance of a jury finding petitioner guilty of voluntary manslaughter instead of murder.

(Pet., ECF No. 1) (errors in original).

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth



specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 582 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the

petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101.

Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.      Summary Judgment Motion**

**1.      Ineffective Assistance of Counsel Generally**

A defendant has a constitutional right to the effective assistance of counsel.  To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").  To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.  With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)."  Harrington, 562 U.S. at 105.  The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).  The Court instructed that the standards created under Strickland and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. (citations omitted).  Thus, when a federal habeas court reviews a state court's determination

regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the court could have relied upon in summarily denying Burke's petition. Therefore, the court will first consider whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

### 2.    Ground One:  Failure to Raise an Insanity Defense

In Ground One, Burke contends that the PCR court erred in denying relief for ineffective assistance of counsel for failure to pursue an insanity defense. (ECF No. 1-2 at 2.) Burke argues that "[i]t is clearly established federal law that counsel is ineffective for not exploring an [i]nsanity defense where it is the only avenue to offer a 'Ray of promise' [w]here evidence supports the charge." (Id. at 4.) After a careful review of the record and the parties' pleadings, the court finds Burke's Ground One is without merit.

Both Burke and trial counsel testified at the PCR hearing. Relevant to this claim, Burke testified as follows:



Q. Mr. Burke, do you believe that Mr. Nettles was ineffective in his representation of you because he did not pursue the insanity defense?
A. Yes, sir.
Q. Do you know or what do you think Mr. Nettles should have done in order to present the insanity defense?
A. He should've --- He should've had an expert to examine me and see if I was all right because I was most certain to be found guilty if I went to trial. My own statement --- I got on the stand and said I did it. How could I not be found guilty? The only defense that was going to help in any way was if an insanity defense prevailed which was the only avenue that offered a ray of promise.
Q. And, to the best of your knowledge, did Mr. Nettles ever set up a time for you to be evaluated prior to trial by a mental health professional?
A. No, sir.
Q. Mr. Burke, do you believe that it's reasonable that, had an insanity defense been presented, do you think it's reasonable to expect the outcome of the trial could have been different?
A. Yes, sir. My reason for belief is because the defense lawyer and prosecutor for the State, they both argued my state of mind during closing arguments to the jury in some degree, but the jury couldn't take none of that into consideration because they wasn't instructed by the [Judge] that they could do so.

(App. at 725-26, ECF No. 10-4 at 72-73.) Subsequently, trial counsel was questioned regarding his

failure to present an insanity defense. On direct examination, trial counsel was asked:

Q. Did you ever consider hiring any experts for Mr. Burke's defense in any area?
A. No. I mean, no. I mean, did I consider it? I mean, did I consider the discovery as --- You know, when you read discovery, you're always looking for whether you may need an expert or not. I didn't think we needed one.
. . . .
Q. And, with regards to Mr. Burke's issue E, failing to present an insanity defense, it was your trial strategy to use these witnesses to show his state of mind and to show that he was stressed and possibly not in a normal state of mind?
A. Well, I mean, I think it was, yeah. I mean, I think it was more to show that what propelled him to do this was not malice but grief. I mean, you know, for murder, you have to have a heart devoid of all social instincts and fatally bent on mischief and that the quality, I mean, even if it was malice, that the quality of malice was a less dark form of malice . . . .

(App. at 762-63, 766-67, ECF No. 10-4 at 109-10m 113-14.) Burke's PCR counsel then cross-

examined trial counsel on this subject:

Q. . . . You made the decision, didn't you, to not have a mental evaluation done?
A. Right.



Q.  And that mental evaluation would have or potentially could have gone towards his capacity to stand trial or also intent, criminal intent?  Correct?

A.  I guess the mental evaluation would have --- I mean, it could've --- The parameters of the mental evaluation could've been dictated.  We could've dictated that, so, yeah.  I mean, if that's what we had dictated, we could've asked the doctor --- I mean, we could've set parameters on what we wanted the doctor to look at.

Q.  And you had previously been involved in cases -- I think you said maybe some capital cases or other cases -- in which the defendant's mental state, mental status or mental health, was an important factor.  Correct?

A.  Right.

Q.  You didn't have, at the time you represented Mr. Burke, any more or less medical training to determine mental status that you did when you had those other cases, did you?

A.  No.  I mean, if there was any, it was not appreciable.

Q.  Did you, in those other cases, make any sort of clinical determination as to your client's mental health or capacity?

A.  I think that sometimes --- Well, yeah, I mean, I always made a decision about whether I thought they needed to be evaluated or not.

Q.  No, I don't mean whether they should be evaluated or not.  I mean an actual clinical determination of a mental illness.

A.  A diagnosis?

Q.  Yes, sir.

A.  No.

Q.  So you relied upon other folks with that appropriate training to do that, didn't you?

A.  I would rely on another person to make a diagnosis.

Q.  And a diagnosis is made, isn't it, by whoever the health professional is gathering all the facts and information they deem relevant to make that decision.  Correct?

A.  Right.

Q.  And, in your job as a defense attorney, you're also gathering facts and information you deem to be relevant.  Correct?

A.  Well, I think you can only determine whether it's relevant as you're gathering it, so I would think that you gather it and then decide whether it's relevant.

Q.  Yes, sir, I agree with that.  And, in this case, you testified on direct that the important issue here was not what happened but the why.

A.  Right.

Q.  Wouldn't you agree that, if a mental evaluation had been done and let's say that mental evaluation came back and said there was no capacity issue, there was no, you know, insanity issue but it did perhaps show severe depression, it did perhaps show severe stress, it did show some type of disorder, wouldn't you agree that could've been evidence that could've been used to go towards the manslaughter, to go towards the lack of malice?

A.  Yes, but the problem would've been then the government would've gotten to examine him which would've meant I would've had to sent [sic] him over to Bull Street which would've meant they would've got to spend four days with him.  And



the theory of the case was that, by doing it through lay testimony, I was able to get in front of the jury what was going on in his mind without exposing him to a State evaluation.

Q. And that was based, in part, on your lay opinion of his mental health.

A. No. It was based on my professional opinion as a lawyer that, even if they had come back with the depression, that even if my expert had come back with depression, that then that would've, if I would've asserted that as a defense, that then the State would've gotten a crack at having him evaluated.

Q. Okay. So, at the very worse, there would've been conflicting opinions as to his mental health. Is that correct?

A. Right. If I don't --- If I don't put up an expert at all, then there's no conflicting . . . The government had absolutely no evidence that he was anything other than depressed. So I felt that we were minimizing our exposure.

(App. at 774-77, ECF No. 10-4 at 121-24.)

The PCR court rejected Burke's insanity claim, finding:

> This Court finds Applicant [Burke] failed to meet his burden to prove trial counsel was ineffective for failing to present an insanity defense at trial. This Court finds Applicant had an opportunity to undergo a competency and criminal responsibility evaluation, but declined to do so on his own volition prior to trial counsel's substitution on his case. First, this Court finds Applicant's claim is based on speculation and is inherently unreliable. A PCR applicant cannot show that he was prejudiced by counsel's failure to call a favorable witness to testify at trial if that witness does not later testify at the PCR hearing or otherwise offer testimony within the rules of evidence. Glover v. State, 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995). This Court finds trial counsel's testimony credible that after diligent investigation, he decided not to pursue an untenable insanity defense.
>
> Second, this Court finds the trial strategy pursued by trial counsel was valid. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). See also Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005). This Court finds trial counsel was an accomplished and renowned capital defender and that trial counsel had abundant experience on presenting mental health defenses. This Court particularly finds counsel's testimony compelling regarding his trial strategy to negate malice. By pursuing this strategy, trial counsel precluded the solicitor from utilizing experts in rebuttal to his presentation of Applicant's case.

(App. at 787, ECF No. 10-4 at 134.)

As an initial matter, in denying and dismissing Burke's application, the PCR court found trial counsel's testimony more credible than Burke's testimony.  (Id.)  Burke's response in opposition to the respondent's summary judgment motion challenges the PCR court's credibility determination and the court's determination that trial counsel's strategy to show the jury that the offense was not committed with malice was reasonable.  (ECF No. 20 at 2-7.)  It is Burke's contention that trial counsel was deficient under Strickland because counsel's strategy focused on his state of mind, that he was "disturbed" (App. at 141-42, ECF No. 10-1 at 144-45), yet counsel did not request an expert evaluation, nor present an insanity defense.  (Petr.'s Opp'n Mot. Summ. J., ECF No. 20 at 2-7.)  After carefully reviewing the record, the court finds that the information provided by Burke does not show that the credibility determination by the PCR court is without support.  See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Further, the PCR court reasonably found that trial counsel employed a valid trial strategy, and after diligent investigation, decided not to pursue an insanity defense.   (App. at 787, ECF No. 10-4 at 134.)  The fact that trial counsel's strategy was unsuccessful is insufficient to demonstrate that his performance was deficient.  See United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of Strickland, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' ") (quoting Strickland, 466 U.S. at 689).  Trial counsel had a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, and a court reviewing the reasonableness of trial counsel's decisions must apply "a heavy measure of deference to counsel's judgments."



Strickland, 466 U.S. at 691. "While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by trial counsel after due consideration do not constitute ineffective assistance of counsel." Evans v. Cartledge, C/A No. 0:13-2637-TMC, 2015 WL 1006271, at *10 (D.S.C. Mar. 6, 2015) (citing Strickland, 466 U.S. at 689).

Burke testified at trial that he shot his wife in the midst of a bitter divorce and custody battle after his wife left him for his brother. (App. at 404-59, ECF No. 10-2 at 155-210.) Burke confessed to shooting his wife in the presence of his son. Burke's son testified that his father shot his mother. Counsel's focus at trial was not on the fact that Burke shot his wife, but *why* he shot his wife. On the facts of this case, the PCR court reasonably determined that counsel's strategy of making a case for voluntary manslaughter instead of pursuing an acquittal by reason of insanity falls within the range of competent professional assistance. Burke's claim that trial counsel should have raised an insanity defense is conclusory. Burke does not mention the South Carolina insanity standards or discuss how any of the facts of his case evidence that he was legally insane at the time he committed the offense. The record indicates that PCR counsel's request for a criminal responsibility and capacity to conform (M'Naughten) evaluation for Burke was granted on November 23, 2009. (App. at 666, ECF No. 10-4 at 13.) In September 2010, Burke's motion to relieve PCR counsel and appoint substitute counsel was granted. (App. at 675-76, ECF No. 10-4 at 22-23.) The evaluation was not performed as Burke refused to cooperate because he did not want the Department of Mental Health involved in his case. (App. at 679, ECF No. 10-4 at 26.) Burke has not proffered any evidence which would demonstrate that an insanity defense was viable or would have prevailed at trial. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.' " Harrington, 562 U.S. at 109-10 (quoting Yarborough v. Gentry, 540 U.S. 1 (2003)). In this case, counsel's decision to forego an insanity

defense finds support in the record.  Thus, the state court's conclusion that counsel was not ineffective is not contrary to, or an unreasonable application of, <u>Strickland</u>.  Accordingly, the respondent's motion for summary judgment should be granted as to Ground One.

### 3.    Ground Two and Ground Three:  Failure to Object to Errors in Solicitor's Opening and Closing Statements

Burke next argues that the PCR court erred in failing to find trial counsel was ineffective for not objecting to numerous errors in the solicitor's opening and closing arguments.  In Ground Two, Burke asserts that it was improper for the solicitor to open with "Judge, jury, and executioner," (App. at 59, ECF No. 10-1 at 62), because it characterized him as a murderer and cold blooded killer before he had been found guilty of murder.  (ECF No. 1-2 at 17-20.)  In Ground Three, Burke contends that the PCR court erred in failing to find trial counsel was ineffective when counsel did not object at closing to the solicitor's improper vouching where the solicitor commented:  "Who has something to gain?  Who has something to lose?  Sergeant Frier [investigator] doesn't. . . . What reason does he have to lie?"  (App. at 548-49, ECF No. 10-3 at 50-51; ECF No. 1-2 at 20-24.)

Trial counsel and Burke testified at the PCR hearing.  Pertinent to these allegations, trial counsel testified that he believed the statements were ineffective and he saw no reason to object.  (App. at 767-68, ECF No. 10-4 at 114-15.)  As referenced above, in considering Burke's allegations of ineffective assistance of counsel, the PCR court found trial counsel's testimony more credible than Burke's testimony.  (App. at 187, ECF No. 10-4 at 134.)  The PCR court rejected Burke's challenges to the solicitor's opening and closing statements, determining:

> This Court finds Applicant's allegation that counsel was ineffective for failing to object to the solicitor's opening statement is without merit.  The proper inquiry is not whether the solicitor's remark was undesirable or condemnable, but whether the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  <u>State v. Bennett</u>, 369 S.C. 219, 232, 632 S.E.2d 281, 288 (2006) (quoting <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S.Ct. 2464, 91



L.Ed.2d 144 (1986)).  The solicitor's executioner comment was merely descriptive of the offense charged, murder.  (Tr. 59.)  Furthermore, the comment was supported by testimony of Applicant's son who witnessed Applicant kill the victim.  (Tr. 78.)

This Court finds Applicant's allegation that trial counsel was ineffective for not objecting to various closing statements made by the solicitor is without merit. This Court agrees with trial counsel that the solicitor did not improperly pit witnesses or vouch for a State witnesses' credibility.  See Gi[lc]hrist v. State, 350 S.C. 221, 565 S.E.2d 281 (2002).  When discussing motives of the trial witnesses, the solicitor did not convey a personal opinion nor make any assurances regarding the credibility of the State's witnesses.  Furthermore, the solicitor's statements were confined to the evidence and testimony presented at trial.

(App. at 788, ECF No. 10-4 at 135.)  Further, the PCR court determined that Burke failed to prove

prejudice under Strickland.  (App. at 789, ECF No. 10-4 at 136.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds that

Burke cannot demonstrate that the PCR court unreasonably misapplied clearly established federal

law as decided by the Supreme Court in rejecting his claims of ineffective assistance of counsel or

that the PCR court made objectively unreasonable factual findings.  See Williams, 529 U.S. at 410;

28 U.S.C. § 2254(d), (e)(1).  As observed by the Harrington court, "[t]he pivotal question is whether

the state court's application of the Strickland standard was unreasonable.  This is different from

asking whether defense counsel's performance fell below Strickland's standard."  Harrington, 562

U.S. at 101.  With regard to defense counsel's failure to object to the solicitor's opening comments

regarding "judge, jury and executioner," the court agrees with the PCR court that the solicitor's

comment was merely descriptive of the offense charged, murder.  Burke's son testified at trial to

witnessing his father shoot his mother.  (App. at 78, ECF No. 10-1 at 81.)  Regarding the improper

vouching allegation, the record shows the solicitor did not improperly inject his personal opinion into

his closing argument.  "Vouching occurs when the prosecutor indicates a personal belief in the

credibility or honesty of a witness."  United States v. Sullivan, 455 F.3d 248, 259 (4th Cir. 2006)

(quoting <u>United States v. Sanchez</u>, 118 F.3d 192, 198 (4th Cir. 1997)). Instead, the state argued to the jury that it had reasons to believe certain witnesses and reasons to doubt the credibility of other witnesses. (App. at 548-59, ECF No. 10-3 at 50-61.) Moreover, as referenced above, the evidence against Burke was strong. Given the strong evidence against Burke, the state court determination that Burke suffered no prejudice under <u>Strickland</u> cannot be deemed unreasonable. Consequently, the respondent's motion for summary judgment should be granted as to Ground Two and Ground Three.

###  4.    Ground Four:  Failure to Challenge Malice Jury Instruction

In Ground Four, Burke argues the PCR court erred in finding trial counsel not ineffective for failing to object to the implied malice jury instruction. (ECF No. 20 at 12.) Burke asserts the PCR court erred in finding <u>State v. Belcher</u>, 685 S.E.2d 802 (S.C. 2009), inapplicable to his case. The court disagrees.

In <u>State v. Belcher</u>, decided on October 12, 2009, the South Carolina Supreme Court held that:

> It has long been the practice for trial courts in South Carolina, as sanctioned by this Court, to charge juries in any murder prosecution that the jury may infer malice from the use of a deadly weapon. We granted Belcher's petition to argue against this precedent. Having carefully scrutinized the historical antecedents to this permissive inference, we hold today that a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide.

<u>Belcher</u>, 685 S.E.2d at 803-04. However, <u>Belcher</u> was decided over two years after Burke's direct appeal was completed. (ECF No. 10-9 at 1.) In <u>Belcher</u>, the Supreme Court held that:

> Because our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved. . . . Our ruling, however, will not apply to convictions challenged on post-conviction relief.



Id. at 810  (citing Griffith v. Kentucky, 479 U.S. 314 (1987) and Harris v. State, 543 S.E.2d 716,

717-18 (Ga. 2001)).   Noting this holding, the PCR court recognized that Belcher precluded

retroactive application and therefore determined the pre-Belcher jury charge was not improper.

(App. at 789, ECF No. 10-4 at 136.)  Again, this court must defer to and accept the PCR court's

ruling that the trial court's instruction was correct as a matter of state law.  See Sharpe v. Bell, 593

F.3d 372, 383 (4th Cir. 2010).  Because the trial court's instruction was correct, counsel was not

ineffective for failing to object to it, and the PCR court's conclusion on this claim was not an

unreasonable application of federal law.  See, e.g., Lopez v. Thurmer, 594 F.3d 584, 587 (7th Cir.

2010).   Finally, Burke has failed to demonstrate that the state courts' decisions were so

fundamentally unfair that they resulted in a denial of due process.  See 28 U.S.C. § 2254(a) (stating

that a writ of habeas corpus is available for a state prisoner "only on the ground that he is in custody

in violation of the Constitution or laws or treaties of the United States").  Thus, summary judgment

is appropriate on Ground Four.

### 5.     Ground Five:  Failure to Object During Cross-Examination

In Ground Five, Burke argues that the PCR court erred in finding that trial counsel was not

ineffective for failing to object to the solicitor's cross-examination of him regarding facts not

supported by the evidence.  (ECF No. 20 at 14.)  Specifically, Burke is referencing the state's

question as to whether Burke washed his hands after killing his wife.  (App. at 519, ECF No. 10-3

at 21.)  The PCR court rejected this claim, finding that trial counsel was not ineffective for not

objecting to the solicitor's cross-examination of Burke regarding the blood in the sink since the

question was proper and inferable from the evidence presented at trial.  (App. at 789, ECF No. 10-4

at 136.)  The court agrees.

Upon the introduction of state's exhibit number 53 (picture of sink area), the state directed Burke to examine the picture:

> Q. And right down there on the faucet, it looks like something right at the base of that. What is that, Mr. Burke?
> A. It's red. It could be rust or it could be blood. I'm not sure. It's red. But if you look I think that's one of those old style sinks, one when water leaks around the faucet like that, it looks like rust to me, sir.
> Q. When did you wash your hands, Mr. Burke?
> A. I never did.

(App. at 518-19, ECF No. 10-3 at 20-21.) The solicitor then moved on to questioning Burke regarding his attempt to burn down the home. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded to trial attorneys and state appellate courts reviewing their performance. A defendant must overcome the " 'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' " Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington, 562 U.S. at 109. As discussed above, "when a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel . . . [t]he AEDPA standard and the Strickland standard are dual and overlapping" and the two standards are applied "simultaneously rather than sequentially." Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)). "Because both standards of review are 'highly deferential' to the state court's adjudication . . . , 'when the two apply in tandem, the review is doubly so.' " Id. (citing and quoting Harrington, 562 U.S. at 105) (omissions in original). "When [28 U.S.C.] § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562



U.S. at 105.  The court finds the PCR court reasonably concluded that counsel was not deficient in failing to object here since the solicitor's question was proper and inferable from the evidence presented at trial.  Furthermore, Burke cannot demonstrate that he was prejudiced by trial counsel's failure to object.  In view of the substantial evidence presented at trial, there is not a reasonable probability that the result of the proceeding would have been different had counsel contemporaneously objected to the solicitor's question as to whether Burke washed his hands.  See Strickland, 466 U.S. at 694.  Accordingly, summary judgment should be granted as to Ground Five.

### 6.    Ground Six:  Prejudicial Defense Witness

In his final ground for relief, Burke argues that the PCR court erred in finding that trial counsel was not ineffective by calling defense witness, Addy, a co-worker who testified that petitioner had told him he planned to put his entire family in a caustic chemical tank where such testimony eliminated any chance of a jury finding Petitioner guilty of voluntary manslaughter instead of murder.  (ECF No. 20 at 16-19.)

Trial counsel testified at the PCR hearing that Addy's testimony was intended to show how distraught his client was, and although counsel noted Addy's statement was not entirely helpful, counsel also testified  that Addy was also able to convey how much Burke loved his kids, loved his wife, and how distraught he was when he wife left him for his brother.  (App. at 765-66, ECF No. 10-4 at 112-13.)  The PCR court determined that Burke failed to meet his burden of proving trial counsel was ineffective for calling Addy to testify at trial since trial counsel's decision to call Addy aligned with counsel's trial strategy.  (App. at 788, ECF No. 10-4 at 135.)

 "In considering a claim again on a petition under 28 U.S.C. § 2254, a federal court owes considerable deference to the judgment entered in the state court proceeding."  Yarbrough v. Johnson, 520 F.3d 329, 335 (4th Cir. 2008) (citing 28 U.S.C. § 2254(d), (e)).  In response to the



respondent's motion for summary judgment, Burke asserts that if it was trial counsel's strategy to show it was grief and not malice that propelled his client to commit these acts, Addy's conflicting testimony that he loved but desired to harm his kids was devastating.  Burke contends that Addy's testimony prejudiced him because it "eviscerated [trial counsel's] contention that he was most guilty of voluntary manslaughter."  (ECF No. 1-2 at 35.)  It is well established in federal jurisprudence that decisions concerning the calling of witnesses are matters of strategy left to the attorney and ordinarily cannot constitute ineffective assistance.  Jones v. North Carolina, 547 F.2d 808 (4th Cir. 1977); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call . . . is the epitome of a strategic decision and it is one that we will seldom, if ever, second guess.").  Given the "doubly deferential" consideration that must be applied to a claim of ineffective assistance in a § 2254 proceeding, Harrington, 526 U.S. at 105, the state court reasonably determined that counsel's decision to call co-worker Addy to testify to Burke's emotional instability prior to the murder aligned with trial counsel's manslaughter strategy, and that the benefits derived to Burke from Addy's testimony overshadowed the alleged detriment.  Accordingly, the PCR court's determination should not be disturbed here.  Williams, 529 U.S. at 412-13.  Upon careful review of the transcript and the PCR court's order, for the reasons discussed by the PCR court, the court concludes that Burke has failed to establish that trial counsel's actions were error, much less that they were objectively unreasonable such that it rendered counsel's performance deficient.  Further, as held by the PCR court, Burke has failed to demonstrate prejudice related to this claim.  Strickland, 446 U.S. at 694.  Therefore, Burke has not shown that the PCR court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable.  See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101.  Accordingly, summary judgment should be granted as to Burke's final claim, Ground Six.

PJG

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 9) be granted and Burke's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 18, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).